```
                    FILED
          CLERK, U.S. DISTRICT COURT

               JUN 2 4 2008

          CENTRAL DISTRICT OF CALIFORNIA
          BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANDREA C. SQUIER,                )  No. EDCV 06-1324-RC
                                 )
        Plaintiff,                )
                                 )  OPINION AND ORDER
    v.                           )
                                 )
MICHAEL J. ASTRUE,[1]             )
Commissioner of Social Security, )
                                 )
        Defendant.                )
_____)

Plaintiff Andrea C. Squier filed a complaint on November 28, 2006, seeking review of the Commissioner's decision denying her applications for disability benefits. On May 30, 2007, the Commissioner answered the complaint, and on August 6, 2007, the parties filed a joint stipulation.

## BACKGROUND

### I

On April 28, 2004, plaintiff applied for disability benefits

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

under both Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since January 1, 2002, due to mental problems, back aches, obesity, asthma, and swollen feet, among other conditions. Certified Administrative Record ("A.R.") 3, 62-64, 70. The plaintiff's applications were denied initially and following reconsideration. A.R. 23-36. The plaintiff then requested an administrative hearing, which was held on January 24, 2006, before Administrative Law Judge Lowell Fortune ("the ALJ"). A.R. 39, 232-66. On April 26, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 12-20. The plaintiff appealed this decision to the Appeals Council, which denied review on October 11, 2006. A.R. 5-11.

## II

The plaintiff, who was born on June 30, 1963, is currently 44 years old. A.R. 62. She has a high school education, and has previously worked as a security officer and an orderly. A.R. 71-74, 77A-C, 259-61.

On May 22, 2004, Louis Fontana, M.D., a psychiatrist,[2] examined plaintiff, diagnosed her with amphetamine abuse (in early full remission) and amphetamine-induced mood disorder with depressive features, and determined plaintiff's Global Assessment of Functioning

//

---

[2] Although plaintiff has both physical and mental complaints, she challenges only the ALJ's assessment of her mental complaints.

2

("GAF") was 70.[3] A.R. 136-38. Dr. Fontana opined:

> [Plaintiff] should be able to perform simple and repetitive tasks but could have difficulty with more detailed and complex tasks. She should be able to accept instructions from supervisors and interact with coworkers and the public. She should be able to perform work activities on a consistent basis. She should be able to maintain regular attendance in the workplace and complete a normal workday and workweek.

A.R. 138.

On July 20, 2004, nonexamining psychiatrist Kevin Gregg, M.D., opined plaintiff did not have a severe mental impairment, and determined she had "mild" restrictions in her activities of daily living, no difficulties maintaining social functioning or concentration, persistence or pace, and she had never experienced an episode of decompensation. A.R. 155-68. On November 4, 2004, nonexamining psychiatrist Michael Skopec, M.D., reaffirmed Dr. Gregg's opinions. A.R. 194.

On August 18, 2004, a registered nurse at the Riverside County

---

[3] A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

Department of Mental Health examined plaintiff, diagnosed her with an unspecified mood disorder and polysubstance abuse (in remission) and determined plaintiff's GAF was 46.[4]  A.R. 183-90.  On October 12, 2004, Maureen Terrazano, M.D., diagnosed plaintiff with an unspecified mood disorder and a history of polysubstance dependence (in remission) and determined plaintiff's GAF was 56.[5]  A.R. 178-80, 185, 191.  On November 9, 2004, Dr. Terrazano reported plaintiff complained of auditory hallucinations that did not influence her actions or behavior, and determined plaintiff's memory and judgment were intact, her thoughts were clearly organized and ruminative, and her attitude was pleasant, but she was experiencing depression, anxiety, decreased energy, isolation and social withdrawal and showed flattened affect.  A.R. 195.  Dr. Terrazano opined that although plaintiff could interact appropriately with family members, she could not: maintain a sustained level of concentration; sustain repetitive tasks for an extended period; adapt to new or stressful situations; or interact appropriately with strangers, co-workers, supervisors or authority figures.  Id.  On January 20, 2005, Dr. Terrazano determined it was necessary to rule

---

[4]  A GAF of 46 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[5]  A GAF of 56 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

out whether plaintiff had bipolar disorder or major depression with psychotic features, and determined plaintiff's GAF was 67. A.R. 197-98. Dr. Terrazano opined that although plaintiff's behavior was within normal limits and her memory was intact, she still complained of auditory hallucinations, although these were improved with medication, she was still unstable at times, and she was experiencing anxiety. Id. Dr. Terrazano further opined plaintiff's anxiety limited her activity and could distract her, and plaintiff's auditory hallucinations could affect her reliability and persistence, would probably affect her ability to make simple work-related decisions, and would prevent her from completing a 40-hour work week without supervision. A.R. 198.

Medical expert David Glassmire, Ph.D., a clinical psychologist, testified at the administrative hearing that plaintiff has an unspecified mood disorder, depression and methamphetamine abuse (by history), and these conditions do not limit plaintiff's activities of daily living, cause mild difficulty in plaintiff maintaining social functioning and mild deficiencies of plaintiff's concentration, persistence or pace, and have caused plaintiff no episodes of decompensation. A.R. 237-49. Dr. Glassmire opined plaintiff should be limited to simple repetitive tasks with no more than frequent contact with co-workers or supervisors and occasional public contact and no responsibility for the safety of others or operating any dangerous machinery due to her history of substance abuse. A.R. 239-40.

//

//

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Lingenfelter, 504 F.3d at 1035.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995),

cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the

ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Step One). The ALJ then found plaintiff has the severe impairments of spinal disorder, obesity, unspecified mood disorder, with some depressive features, and methamphetamine abuse (by history) (Step Two); however, she does not have an impairment or

//
//

combination of impairments that meets or equals a Listing.[6]  (Step Three).  The ALJ next determined plaintiff is not able to perform her past relevant work.  (Step Four).  Finally, the ALJ concluded plaintiff can perform a significant number of jobs in the national economy; therefore, she is not disabled.  (Step Five).

## IV

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff retains the RFC for "work between the sedentary[7] and light exertional levels"[8] in that:

---

[6] In reaching this conclusion, the ALJ found plaintiff has no limits in her activities of daily living, mild difficulties maintaining social functioning and concentration, persistence or pace, and she has had no episodes of decompensation.  A.R. 19.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "[T]he full range of light work requires standing or walking for up to two-

> [She] is able to lift 20 pounds occasionally and 10 pounds
> frequently. In an 8-hour workday, [she] is able to stand 2
> hours and sit 6 hours. [She] is occasionally able to climb
> ramps/stairs, balance, bend, stoop, crouch, and kneel/squat.
> She is unable to crawl or climb ladders, scaffolds, [or]
> ropes. The [plaintiff's] gait is normal, but she walks
> slowly. [She] should avoid moderate exposure to vibration
> and all exposure to working at unprotected heights or around
> dangerous or fast-moving machinery. She should also avoid
> all exposure to dusts, fumes, odors, gases or chemicals.
> [She] can perform simple repetitive tasks with occasional
> contact with the general public. She is able to frequently
> interact with coworkers. She should not have any
> responsibility for the safety of others.

A.R. 19. However, plaintiff contends the ALJ's RFC determination, and ultimate decision, are not supported by substantial evidence because the ALJ failed to properly consider Dr. Fontana's opinion that she would have difficulty with more detailed and complex tasks. Jt. Stip. at 3:28-4:2. There is no merit to this contention.

In reviewing Dr. Fontana's opinions, the ALJ specifically held that Dr. Fontana "concluded that the claimant could perform simple and repetitive tasks but she would have difficulty with more detailed and complex tasks. . . ." A.R. 17. More importantly, in assessing plaintiff's RFC, the ALJ limited plaintiff to simple repetitive tasks,

---

thirds of the workday." <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

A.R. 19, which is entirely consistent with Dr. Fontana's opinions. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Thus, contrary to plaintiff's contention, Dr. Fontana's opinion provides substantial evidence to support the ALJ's RFC determination and assessment of plaintiff's mental impairment. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

## V

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Hoopai, 499 F.3d at 1074-75; Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006). To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[9] Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir.

---

[9] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996)

1999); Widmark, 454 F.3d at 1069. However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Widmark, 454 F.3d at 1069.

Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Thomas, 278 F.3d at 956, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101. Here, the ALJ asked vocational expert Stephen M. Berry the following hypothetical question:

> I'm going to ask you to assume a person of the same age, education and work background as the [plaintiff]. Assume this person retains the [RFC] for a full range of light work except for the following additions and[/]or limitations. This person's able to lift 20 pounds occasionally, ten pounds frequently, is able to stand and[/]or walk a total of two out of eight hours, is able to sit a total of six out of eight hours. This person is occasionally able to climb ramps and stairs, is not able to climb ladders, scaffolds and ropes. Is occasionally able to balance, stoop, crouch, kneel and squat, is not able to crawl. This person's gait is normal, but she does walk at a slow pace. **And mentally, this person is able to perform simple, repetitive tasks.**

---

(citations omitted).

> **This person is able to frequently interact with co-workers and occasionally interact with the public. And this person should not have any responsibility for the safety of others.** . . . This person should avoid even moderate exposure to vibration and should avoid all hazards such as dangerous or fast[-]moving machinery and unprotected heights. . . . And in addition, this person should avoid all exposure to fumes, odors, dust, gases and chemicals. All right, based upon these circumstances, could this person . . . perform any other work in the regional or national economy?

A.R. 261-62 (emphasis added). The vocational expert responded that such an individual could perform a significant number of jobs in the regional and national economy, including work as an addresser (Dictionary of Occupational Titles ("DOT")[10] no. 209.587-010), a cutter and paster (DOT no. 249.587-014), and a document preparer (DOT no. 249.587-018). A.R. 261-64. Based on this testimony, the ALJ found at Step Five that plaintiff could perform other jobs in the regional or national economy and, thus, is not disabled. A.R. 18-20. However, plaintiff contends the ALJ's Step Five determination is not supported by substantial evidence because: (a) the hypothetical question to the vocational expert was incomplete since it did not include Dr. Fontana's opinion that plaintiff would have difficulty performing more detailed and complex tasks, Jt. Stip. at 9:14-21; and (b) the vocational expert identified jobs inconsistent with

---

[10] The DOT is the Commissioner's primary source of reliable vocational information. <u>Johnson</u>, 60 F.3d at 1434 n.6; <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990).

plaintiff's RFC, which require reasoning levels beyond the simple repetitive tasks plaintiff can perform. Jt. Stip. at 11:3-14:7. There is no merit to either of these contentions.

Regarding the first contention, the ALJ's hypothetical question to the vocational expert is entirely consistent with Dr. Fontana's opinions, as discussed above. See Bayliss, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper.").

The DOT sets forth guidelines regarding the General Education Development ("GED") required to perform various jobs or occupations, among other features. The GED guidelines are subdivided into three categories – reasoning development, mathematical development, and language development – that are rated on a scale from 1 (lowest) to 6 (highest). U.S. Dep't of Labor, Dictionary of Occupational Titles, 1010-11 (4th ed. 1991). For instance, a reasoning development level of "1" requires an employee to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job"; whereas, a reasoning development level of "6" requires an employee to "[a]pply principles of logical or scientific thinking to a wide range of intellectual and practical problems[,]" to "[d]eal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases[,]" to "[d]eal with a variety of abstract and

concrete variables[,]" and "[a]pprehend the most abstruse classes of concepts." U.S. Dep't of Labor, Dictionary of Occupational Titles, 1010-11 (4th ed. 1991).

The document preparer position (DOT no. 249.587-018) has a reasoning level of "3," which requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations[,]" and the addresser position (DOT no. 209.587-010) and cutter and paster position (DOT no. 249.587-014) both have a reasoning development level of "2," which requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." See U.S. Dep't of Labor, Dictionary of Occupational Titles, 180, 219, 1011 (4th ed. 1991). To the extent plaintiff challenges the ALJ's finding she has the ability to perform the document preparer job, she is correct. A reasoning level of 3 is inconsistent with a limitation to simple repetitive work. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (A limitation to simple and routine work tasks "seems inconsistent with the demands of level-three reasoning."); Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1303-04 (M.D. Fla. 2006) (jobs requiring reasoning level of 3 exceed claimant's limitation to simple interactions and tasks). On the other hand, plaintiff's challenge to the ALJ's findings that she has the ability to perform the addresser and cutter and paster positions is without merit. Plaintiff's limitation to simple, repetitive tasks is not inconsistent with the

15

ability to perform jobs with a reasoning level of two.  See, e.g., Hackett, 395 F.3d at 1176 ("[L]evel-two reasoning appears . . . consistent with . . . Plaintiff's inability to perform more than simple and repetitive tasks. . . ."); Meissl v. Barnhart, 403 F. Supp. 2d 981, 984-85 (C.D. Cal. 2005) (plaintiff who could perform "simple tasks . . . at a routine pace" could perform jobs with reasoning level of 2); Flaherty v. Halter, 182 F. Supp. 2d 824, 850-51 (D. Minn. 2001) ("The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation.  Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved - that is, not a high level of reasoning. Plainly, the VE testimony did not contradict the ALJ's limitation, when considered in light of the DOT definitions.").  Thus, substantial evidence supports the ALJ's Step Five determination that plaintiff can perform a significant number of jobs in the regional or national economy, Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001); Meanel, 172 F.3d at 1115, and plaintiff is not disabled.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: June 24, 2008

ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

R&R-MDO\06-1324.mdo - 6/24/08